1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10   NICOLE LYNN LOWE, et al.,        No.  2:20-cv-01997-JAM-DMC

11              Plaintiffs,

12        v.                          **ORDER GRANTING IN PART AND**
                                      **DENYING IN PART DEFENDANTS**
13   COUNTY OF BUTTE, through its     **COUNTY OF BUTTE AND KORY HONEA'S**
     Dept. of Probation and          **MOTION TO DISMISS**
14   Sheriff's Dept., et al.

15              Defendants.

16

17        I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[1]

18        This case arises from the suicide of inmate Nathaniel Lowe.

19   The facts are taken from the Complaint and assumed to be true for

20   the purposes of this motion.  On September 9, 2019, Mr. Lowe, as

21   a result of his mental illness was experiencing hallucinations,

22   paranoia, and suffered a breakdown.  Compl. ¶ 31, ECF No. 1.

23   This erratic behavior caused him to be arrested by the Chico

24   Police and incarcerated as a pretrial detainee at Butte County

25   Jail, which is operated and overseen by Sheriff Honea.  Id. ¶ 32.

26

     _____

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for March 9, 2021.

                                    1

At booking, Mr. Lowe was noted to be suicidal, depressed, hearing voices, and incapacitated by his mental illness. Id. ¶ 33. Initially, he was placed in a psychiatric cell where inmates are to be closely and continuously observed by custody and medical staff for suicide attempts, self-harm, and harm to others. Id. Mr. Lowe reported that he had attempted suicide before and that he was currently suicidal. Id. ¶ 34. As a result, he was placed on suicide watch and given various medications. Id. ¶ 35. While on suicide watch, a noose made from bed sheets was found in his cell and he expressed, on multiple occasions, he wanted to take his own life. Id. ¶¶ 49, 50. Just six days later, however, on September 16, 2019, he was discharged from suicide watch and suicide prevention. Id. ¶¶ 37, 51. Plaintiffs allege that after his discharge from suicide watch, Mr. Lowe continued to show signs of deteriorating mental health while at Butte County Jail. Id. ¶ 36. For example, he engaged in self-harm, reported voices were telling him to kill himself, slammed his head against the wall, and threatened suicide. Id. He also asked for medications and to be placed in a mental hospital. Id.

On November 8, 2019, Mr. Lowe was transferred from Butte County Jail to the California Department of Corrections and Rehabilitation ("CDCR"). Id. ¶ 52. Butte County officials failed to inform CDCR of Mr. Lowe's mental illness and suicidal ideation. Id. Accordingly, he was placed in general population. Id. Shortly thereafter, on November 11, 2019, he committed suicide. Id. ¶ 53.

Mr. Lowe's mother and children ("Plaintiffs") then brought

2

this suit against the County of Butte, Sherriff Honea (collectively "Defendants") and others not privy to the current Motion. Relevant here, Plaintiffs brought: (1) a 1983 claim against Butte County and Sheriff Honea, both in his individual and official capacity, for violations of the Fourth and Fourteenth Amendment; (2) a 1983 failure to train and supervise against Butte County and Sheriff Honea; (3) a 1983 Monell claim against Butte County; (4) violation of California Civil Code § 52.1 against Sheriff Honea; (5) violation of the ADA, Rehabilitation Act and the California Unruh Act against Butte County; (6) violation of California Government Code § 845.6 against Butte County and Sheriff Honea; (7) a negligence/ wrongful claim against Sheriff Honea; (8) medical negligence/ wrongful death claim against Butte County; and (9) a denial of substantive due process right to familial relationship. See Compl.

Butte County and Sheriff Honea (collectively "Defendants") then filed this Motion to Dismiss. Defs' Mot. to Dismiss ("Mot."), ECF No. 17. Plaintiffs opposed this Motion, Opp'n, ECF No. 29, to which Defendants replied. Reply, ECF No. 31. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.


II.   OPINION

A.   Legal Standard

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ.

P. 12(b)(6).  "To survive a motion to dismiss [under 12(b)(6)],

a complaint must contain sufficient factual matter, accepted as

true, to state a claim for relief that is plausible on its

face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal

quotation marks and citation omitted).  While "detailed factual

allegations" are unnecessary, the complaint must allege more

than "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements."  Id.  In

considering a motion to dismiss for failure to state a claim,

the court generally accepts as true the allegations in the

complaint, construes the pleading in the light most favorable to

the party opposing the motion, and resolves all doubts in the

pleader's favor.  Lazy Y Ranch LTD. v. Behrens, 546 F.3d 580,

588 (9th Cir. 2008).  "In sum, for a complaint to survive a

motion to dismiss, the non-conclusory 'factual content,' and

reasonable inferences from that content, must be plausibly

suggestive of a claim entitling the plaintiff to relief."  Moss

v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

B.    Analysis

1.    Compliance with Federal Rule of Civil Procedure

8(a)(2)

Defendants first argue the entire Complaint should be

dismissed because it "is unduly burdensome."  Mot. at 5.

Federal Rule of Civil Procedure 8(a)(2) "requires only a short

and plain statement of the claim showing that the pleader is

entitled to relief, in order to give the defendant fair notice

of the what the . . . claim is and the grounds upon which it

rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

4

(internal quotation marks and citation omitted).

Defendants cite to <u>McHenry v. Renne</u>, 84 F.3d 1172 (9th Cir. 1996) to support their position.  In that case, the Ninth Circuit upheld the district court's dismissal of a complaint under Rule 8 because it did not contain a short and plain statement of the claims for relief, did not give defendants a fair opportunity to frame a responsive pleading, and did not give the court a clear statement of the claims.  <u>Id.</u> at 1174. In affirming the dismissal, the Ninth Circuit noted that the "thirty-seven page amended complaint is mostly an extended narrative of the details of the various activities of plaintiff McHenry, and his numerous alleged arrests" and "his claims are set out in a single sentence thirty lines long, alleging numerous and different violations of rights, without any specification of which of the twenty named defendants or John Does is liable for which of the wrongs."  <u>Id.</u>  The district court had found particularly troublesome "the impossibility of figuring out which defendants were allegedly liable for which wrongs."  <u>Id.</u> at 1175.

The only similarity Defendants point to between the complaint in <u>McHenry</u> and the one at issue here, is its length. Defendants state that because Plaintiffs have "filed a sixty-two page complaint that includes one-hundred and forty-eight paragraphs of allegations" it is "unduly burdensome and should be dismissed."  Mot. at 4-5.  The Court declines to do so.  It's clear that the issue in <u>McHenry</u> was not the complaint's length but rather that it did not inform the court or defendants "of the legal claims being asserted."  <u>McHenry</u>, 84 F.3d at 1176.

The district court in <u>McHenry</u> specifically noted that the plaintiffs failed to follow "the traditional pleading style which prescribes a 'short and plain statement' of basic allegations followed by an outline of each legal claim based on specific allegations of fact."  <u>Id.</u>

    That is precisely what Plaintiffs do here in their complaint.  Plaintiffs provide a section of the general allegations.  Compl. ¶¶ 31-65.  This is followed by an outline of each legal claim and the specific facts upon which they are based.  Importantly, the Complaint specifies which Defendants each claim is brought against.  If Defendants take issue with or are confused by a <u>specific</u> portion of the Complaint, Defendants may move for a more definitive statement.  However, the Court is not persuaded that a general assertion that the Complaint is too lengthy warrants dismissal, especially when Plaintiffs assert a number of claims.  Accordingly, Defendants' Motion to Dismiss the entire complaint under Rule 8 is DENIED.

          2.  <u>Section 1983 Claim</u>

    Section 1983 allows for a civil action against any person who, under color of law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42. U.S.C. § 1983.  "Individuals in state custody have a constitutional right to adequate medical treatment.  For inmates serving custodial sentences following a criminal conviction, that right is part of the Eighth Amendment's guarantee against cruel and unusual punishment.  However, pretrial detainees have not yet been convicted of a crime and therefore are not subject to punishment by the state.  Accordingly, their rights arise

under the Fourteenth Amendment's Due Process Clause." <u>Sandoval</u>
<u>v. Cty. of San Diego</u>, 985 F.3d 657, 667 (9th Cir. 2021). "[T]he
elements of a pretrial detainee's medical care claim against an
individual defendant under the due process clause of the
Fourteenth Amendment are: (i) the defendant made an intentional
decision with respect to the conditions under which the
plaintiff was confined; (ii) those conditions put the plaintiff
at substantial risk of suffering serious harm; (iii) the
defendant did not take reasonable available measures to abate
that risk, even though a reasonable official in the
circumstances would have appreciated the high degree of risk
involved — making the consequences of the defendant's conduct
obvious; and (iv) by not taking such measures, the defendant
caused the plaintiff's injuries." <u>Gordon v. Cty. of Orange</u>, 888
F.3d 1118, 1125 (9th Cir. 2018). Defendants appear to argue
that Plaintiffs have not adequately alleged the final two
elements of a Fourteenth Amendment medical care claim — whether
Butte County officials took reasonable available measures to
abate the risks to Mr. Lowe, and whether the failure to take
those measures caused his injuries. <u>See</u> Mot. at 5-6. The Court
notes that although the Section 1983 claim is also purportedly
based on a violation of the Fourth Amendment, neither side
addresses it in their briefing.[2]

a.  <u>Reasonable Available Measures</u>

A Fourteenth Amendment due process claim for lack of

_____

[2] The Court is skeptical that a Fourth Amendment claim can be
sustained on such facts but refrains from addressing the issue
when not briefed by the parties.

medical treatment requires that "the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved — making the consequences of the defendant's conduct obvious." Gordon, 888 F.3d at 1125. "To satisfy [this] element, the plaintiff must show that the defendant's actions were objectively unreasonable, which requires a showing of more than negligence but less than subjective intent — something akin to reckless disregard." Sandoval, 985 F.3d at 669.

Plaintiffs allege that on September 10, 2019 Butte County officials determined Mr. Lowe suffered from schizophrenia and was suicidal. Compl. ¶ 48. Accordingly, he was placed on suicide watch. Id. On September 12, 2019 employees discovered a noose made from bed sheets in his cell. Id. ¶ 49. He also expressed that he wanted to take his own life and continued to suffer from hallucinations. Id. ¶¶ 49, 50. Despite this, he was discharged from suicide watch on September 16, 2019. Id. ¶ 51. Then upon his transfer on November 8, 2019, Butte County officials failed to inform CDCR of his mental illness and suicide risk. Id. ¶ 52. He was thus placed in general population. Id. Shortly thereafter, on November 11, 2019, Mr. Lowe hung himself. Id. ¶ 53.

Plaintiffs further allege that in the weeks preceding his suicide and transfer, Butte County officials had notice of his deteriorating mental health condition and threats of suicide. Id. ¶ 36. Specifically, Mr. Lowe: engaged in self-injurious behavior, reported voices were telling him to kill himself,

slammed his head against the wall, tied a noose made of sheets, and threatened suicide.  Id.  He also asked for medications, or to be placed in a mental hospital.  Id.  Yet Defendants discontinued his treatment, failed to place him back on suicide watch, and didn't tell CDCR of his condition.  Id. ¶ 37.

Defendants argue that Plaintiffs have failed to allege they denied or delayed medical treatment as they "took the necessary actions to abate the risk of suicide."  Mot. at 6.  The Court disagrees.  Rather, taking Plaintiffs' allegations as true, it is plausible that it was objectively unreasonable for Butte County officials to fail to place Mr. Lowe back on suicide watch, in the weeks preceding his transfer, or inform CDCR of his condition, given his medical history and ongoing suicidal behaviors.

b.  Causation

"In a 1983 action, the plaintiff must [. . .] demonstrate that the defendant's conduct was the actionable cause of the claimed injury."  Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).  "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation."  Id.  This "causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).

Defendants argue that Plaintiffs' 1983 claims should be dismissed because "it cannot be shown that Defendants' conduct

was the actionable cause of the claimed injury." Mot. at 6.

This argument fails for two reasons. First, Plaintiffs do not have to "show" anything at the pleading stage. See Medina-Velazquez v. Hernandez-Gregorat, 767 F.3d 103, 111 (1st Cir. 2014) ("For pleading purposes, [plaintiffs] need not establish causation. The facts contained in the complaint need only show that the claim of causation is plausible.") (internal quotation marks and citations omitted). Rather to survive a 12(b)(6) motion to dismiss a complaint need only "contain sufficient factual matter, accepted as true to state a claim for relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation marks and citation omitted). Second, in their briefing Defendants seem to imply that no Butte County official could be said to be the actionable cause of Mr. Lowe's death. See Mot. at 5-6. But whether Plaintiffs have alleged sufficient facts to state a plausible claim that Butte County officials caused Mr. Lowe's injury is a different question than whether Defendants bringing this Motion can be held liable for those acts. Assuming Defendants meant to argue that Plaintiffs have not alleged a plausible claim that any Butte County official caused Mr. Lowe's injuries, the Court disagrees.

(i)  Causation In Fact

To demonstrate causation-in-fact the plaintiff must demonstrate that the injury would not have occurred but for defendant's unlawful conduct. White v. Roper, 901 F.2d 1501, 1505 (9th Cir. 1990).

Defendants argue that Plaintiffs "are unable to establish cause-in-fact causation" because at the time of his suicide, Mr.

10

Lowe was at a different facility. Mot. at 5. But this argument
ignores Plaintiffs' allegations, which must be taken as true,
that Butte County officials failed to keep Mr. Lowe on suicide
watch and failed to inform CDCR of his suicide risk prior to
transfer. Plaintiffs further allege that if Defendants had
taken these actions Mr. Lowe would have received proper care and
attention at CDCR that could have prevented his suicide. This
is enough to survive a motion to dismiss. Defendants point to
no persuasive authority that this is insufficient to state a
claim. In fact, the authority they do cite involve motions made
at much later stages of litigation. See Mot. at 5 (citing
Harper v. City of Los Angeles, 533 F.3d 1010 (9th Cir. 2008)
(involving a renewed motion for judgment as a matter of law
after a jury verdict) and Arnold v. Int'l Bus. Mach. Corp., 637
F.2d 1350 (9th Cir. 1981) (involving summary judgment)).

Defendants also argue Plaintiffs have failed to allege
cause-in-fact causation because the complaint claims Mr. Lowe
was placed in the CDCR general population both because of Butte
County's failure to properly advise CDCR of his suicide risk and
CDCR employee's failure to review Lowe's medical history. See
Mot. at 5. But this is not contradictory as Defendants contend.
It can be true both that had Butte County employees warned CDCR
about Lowe's condition he would not have died and had CDCR
employees checked his medical files he also would not have died.
See Harper, 533 F.3d at 1027-28. It is at least plausible that
but for their failure to inform CDCR about Lowe's risk of
suicide CDCR would have placed him in appropriate care and he
would not have committed suicide. This is sufficient to survive

11

a motion to dismiss.  See Medina-Velazquez, 767 F.3d at 111

("For pleading purposes, [plaintiffs] need not establish

causation.  The facts contained in the complaint need only show

that the claim of causation is plausible.") (internal quotation

marks and citations omitted).

(ii) <u>Proximate Cause</u>

The defendant must also be the proximate or legal cause of

the injuries suffered.  <u>Arnold v. Int'l Bus. Machines Corp.</u>, 637

F.2d 1350, 1355 (9th Cir. 1981).  An actor is the proximate

cause when it was reasonably foreseeable that their acts could

cause the injury.  <u>Id.</u>

Defendants do not appear to challenge that Plaintiffs have

sufficiently alleged proximate cause, but for purposes of

completeness, the Court addresses it.  <u>See</u> Mot. at 5-6.  The

Court finds Plaintiffs have also sufficiently alleged proximate

cause.  Taking the facts in the Complaint as true, it seems

foreseeable that failing to properly treat inmates for suicide

could lead to suicide and failing to inform CDCR of an inmate's

suicidal condition could lead to improper housing classification

and care, leading to suicide.  <u>See</u> <u>Conn v. City of Reno</u>, 572

F.3d 1047, 1061 (9th Cir. 2009), <u>amended and superseded</u>, 591

F.3d 1081 (9th Cir. 2010), <u>vacated</u>, 563 U.S. 915 (2011),

<u>reinstated and amended</u>, 658 F.3d 897 (9th Cir. 2011).

3.   <u>Supervisory Liability of Sherriff Honea</u>

Liability under Section 1983 may not be predicated on

vicarious liability.  <u>Iqbal</u>, 556 U.S. at 676.  Instead, "a

plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the

12

Constitution." Id. A supervisor may be liable under
Section 1983 upon a showing of (1) personal involvement in the
constitutional deprivation or (2) a sufficient causal connection
between the supervisor's wrongful conduct and the constitutional
violation. Henry A. v. Willden, 678 F.3d 991, 1003-04 (9th Cir.
2012). Even if a supervisory official is not directly involved
in the allegedly unconstitutional conduct, "[a] supervisor can
be liable in this individual capacity for his own culpable
action or inaction in the training, supervision, or control of
his subordinates; for his acquiescence in the constitutional
deprivation; or for conduct that showed a reckless or callous
indifference to the rights of others." Starr v. Baca, 652 F.3d
1202, 1208 (9th Cir. 2011) (citation omitted). The claim that a
supervisory official "knew of unconstitutional conditions and
'culpable actions of his subordinates' but failed to act amounts
to 'acquiescence in the unconstitutional conduct of his
subordinates' and is 'sufficient to state a claim of supervisory
liability.'" Keates v. Koile, 883 F.3d 1228, 1243 (9th Cir.
2018) (quoting Starr, 652 F.3d at 1208).

In Starr v. Baca, the Ninth Circuit found that the
plaintiff's allegations were sufficient to state a claim of
supervisory liability for deliberate indifference to an inmate's
medical needs against the Sheriff when the plaintiff alleged the
Sheriff's knowledge of the unconstitutional conditions in the
jail, coupled with his inaction, amounted to acquiescence in the
unconstitutional conduct of his subordinates. 652 F.3d at 1208.
The Court noted the complaint went well beyond reciting the
elements of a claim of deliberate indifference as the complaint

13

specifically alleged numerous similar incidents in which inmates had been killed or injured because of the culpable actions of Sheriff Baca's subordinates.  Id. at 1216.

Here, Plaintiffs allege that Sheriff Honea was aware of the constitutionally inadequate mental health care but took no action to remedy it.  Compl. ¶¶ 26, 38, 40, 63, 69, 70.  For example, Plaintiffs state Sheriff Honea "had been repeatedly alerted to the facts of this unconstitutional conduct and knew the jail had become unsafe for those with serious mental health needs."  Id. ¶ 26.  However, unlike Starr, Plaintiffs make no specific factual allegations supporting their assertion that Sheriff Honea was aware of the unconstitutional conditions.  In Starr the plaintiff alleged, for example, that the United States Department of Justice ("DOJ") initiated an investigation into the conditions of the jail and gave the Sheriff clear written notice in a findings letter of a continued pattern of constitutional violations.  Starr, 652 F.3d at 1209.  The Starr plaintiff also gave detailed allegations of other similar incidents that had occurred prior to his.  See id. ("In paragraph 39, Starr alleges that on July 6, 2002 Ramon Garcia was severely beaten by a female deputy and later . . . was killed in his cell at [the] county jail.  [. . .]  In paragraph 40, Starr alleges that on March 23, 2003 BACA was . . . again made aware of Hispanic inmate gangs attacking African Americans and the failure to provide reasonable security when the COUNTY and LASD approved a settlement in a civil action where Ahmad Burrell, Rory Fontanelle, and Aaron Cunningham were attacked over a three day period, sustaining serious injuries.")

14

Plaintiffs' allegations that Sherriff Honea had knowledge of the unconstitutional conditions and took no action, alone is not enough to state a claim of supervisory liability for inadequate medical care against the Sheriff.  This assertion must be supported by specific facts.  See Figueira ex rel. Castillo v. Cty. of Sutter, 2:15-cv-00500-KJM-AC, 2015 WL 6449151 at *5 (E.D. Cal. Oct 23, 2015) (finding allegations that the defendants knew or should have known insufficient on its own).  Plaintiffs allege that Sheriff Honea should have known of the conditions based on "prior reports and recommendations not to rehire CFMG, ignoring judicial orders to abate or take corrective action regarding to the mentally ill, notice from quality assurance and death reviews, from litigation alleging failure to provide reasonable medical and mental health care, and from publications of endemic, ongoing and risks of injury or death to inmates."  Compl. ¶ 40.  But these "naked assertions devoid of further factual enhancement" like dates, what the publications or reports were, what they said, or any of the specific circumstances regarding other incidents, has not nudged Plaintiffs' claims "across the line from conceivable to plausible."  Iqbal, 566 U.S. at 678-680 (internal quotation marks and citation omitted).  Accordingly, Defendants' Motion to Dismiss the first and second causes of action against Sheriff Honea in his individual capacity is GRANTED.  These claims are DISMISSED WITHOUT PREJUDICE.  Plaintiffs also concede that they cannot sue both Sheriff Honea in his official capacity and the County.  See Luke v. Abbott, 954 F.Supp. 202, 203 (C.D. Cal. 1997) ("when both an official and the local government entity

are named in a lawsuit and the officer is named in official capacity [. . .] the officer is a redundant defendant and may be dismissed." ) Therefore, the first and second cause of action against Sheriff Honea in his official capacity are also DISMISSED WITH PREJUDICE.[3]

        4.  <u>Monell Claim</u>

     Municipalities and local governments may be held liable under Section 1983 for constitutional injuries inflicted through a municipal policy or custom. <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694 (1978). "A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Tsao v. Desert Palace, Inc.</u>, 698 F.3d 1128, 1143 (9th Cir. 2012) (internal quotation marks and citation omitted). "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 681 (9th Cir. 2001) (quoting <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992)). Then, a plaintiff must show: (1) they were deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. <u>Dougherty v.</u>

---

[3] Because the Court dismisses all claims against Sheriff Honea on these grounds, it does not reach the issue of whether he is entitled qualified immunity.

City of Covina, 654 F.3d 892, 900 (9th Cir. 2011); Mabe v. San Bernardino Cty., 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Additionally, a municipality's failure to train its employees may create Section 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." Long v. Cty. of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006). A plaintiff alleging a failure to train must show: (1) he was deprived of a constitutional right; (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its employees] are likely to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those employees. Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007). "Only where a municipality's failure to train its employees in a relevant respect evidence a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, 489 U.S. at 390. A "pattern of tortious conduct," despite the existence of a training program, or "highly predictable" constitutional violations due to a "failure to equip [employees' with specific tools to handle recurring situations," are circumstances in which liability for failure to train may be imposed. Bd. of

Cty. Comm'rs v. Brown, 520 U.S. 397, 407-10 (1997). However, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." City of Canton, 489 U.S. at 391.

In alleging a Monell claim the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (internal quotation marks and citation omitted). "[T]he factual allegations [. . .] taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing part to be subject to the expense of discovery and continued litigation." Id.

Plaintiffs bring a claim against Butte County based on a failure to train and supervise and for an unconstitutional custom or policy. See Compl. at 31-36. Defendants argue Plaintiffs have not adequately alleged a policy of inaction or inadequate training, as the complaint shows Defendants did address Mr. Lowe's mental health needs. Mot. at 8. Specifically, the Complaint claims that around September 10, 2019, the day after he was booked, Butte County employees determined Mr. Lowe was schizophrenic and suicidal and he was placed on suicide watch. Compl. ¶ 48. Then six days later, on September 16, 2019, he was discharged. Id. ¶ 51. Defendants argue this shows, they "took the necessary actions to abate the risk of suicide" and "no facts are alleged to support an

inference of unconstitutional conduct for the period of time, 22 days, after September 16 through November 8 when he was transferred." Mot. at 8.

The Court disagrees. That Defendants treated Mr. Lowe for six days does not necessarily mean they provided him with constitutionally adequate care. See Mendoza v. Cty. of San Bernardino, EDCR 19-1056 JGB (SHKx), 2020 WL 2066142 at *6 (C.D. Cal. Feb. 21, 2020) ("Providing some care is not an absolute bar to a medical indifference claim, especially if the care provided could have equally alerted Defendant to the existence of a substantial ongoing medical risk.") Plaintiffs allege that in the weeks preceding his suicide, while he was in Butte County's custody, Mr. Lowe showed signs of deteriorating mental health. Compl. ¶ 36. Specifically, Plaintiffs allege he engaged in self-injurious behavior, reported voices were telling him to kill himself, slammed his head against the wall, tied a noose made of sheets, and threatened suicide. Id. Additionally, he asked for medications, or to be placed in a mental hospital. Id. However, he was not placed back on suicide watch nor did he receive a higher level of care. Id. ¶¶ 36, 37. That he went untreated for twenty-two days and committed suicide shortly after his transfer to CDCR, supports an inference that the earlier six-day treatment was insufficient.

As to whether Plaintiffs have pled an adequate Monell claim based on a policy of inaction or failure to train, the Court finds they have not. While, for the reasons described above, Plaintiffs have sufficiently alleged Mr. Lowe was denied his constitutional right to adequate medical care, they have not

pled sufficient facts to demonstrate a pattern, custom, or policy. Plaintiffs allege that Defendants had a pervasive custom of: (1) denying inmates psychiatric attention, continuity of care, and access to higher levels of care not available at the jail for those in need; (2) failing to properly classify, house, and monitor inmates suffering from mental health issues; (3) failing to maintain sufficient medical and mental health staff; and (4) failing to use appropriate National and State accepted jail minimum standards, procedures, and practices for handling suicidal inmates. Id. ¶ 88. But Plaintiffs fail to identify any other instances in which inmates at the County Jail received substandard care in order to demonstrate that the alleged custom, policy, or practice was the "standard operating procedure" or that the County was deliberately indifferent to the need to train. Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992); see also Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") Plaintiffs only support their contention that these were 'customs' by stating that "quality assurance, death reviews, litigation, and publications demonstrate years of such practices." Id. ¶ 40. But such general, conclusory allegations without any underlying facts to support them is insufficient. See Starr, 652 F.3d at 1216. Because Plaintiffs have failed to allege sufficient facts demonstrating a pattern, practice, or custom Defendants' Motion to Dismiss Plaintiffs' Monell claims

against Butte County, the first, second, and third causes of action, are GRANTED WITHOUT PREJUDICE.

### 5. California Civil Code § 52.1(b) Claim

The Bane Act allows an aggrieved individual to bring a civil action for damages when that person's constitutional or statutory rights have been "interfered with [. . .] by threats, intimidation, or coercion" or by an attempt to threaten, intimidate, or coerce.  Cal. Civ. Code § 52.1(a)-(b).  "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law."  Cornell v. City & Cty. of San Francisco, 225 Cal.Rptr.3d 356, 376 (Ct. App. 2017).

Defendants argue that Plaintiffs have failed to state a claim under the Bane Act as they allege no facts to support Mr. Lowe's constitutional rights were interfered with by threats, intimidation, or coercion.  See Reply at 5.  Plaintiffs contend, that the Bane Act does not require allegations of threats, coercion, or intimidation beyond the alleged constitutional violation.  Opp'n at 13.  The Court agrees that plaintiffs need not allege additional facts demonstrating threats, coercion, or intimidation when the underlying constitutional violation necessarily involves one of the above.  But because failure to respond to an inmate's medical needs does not necessarily involve threats, coercion, or intimidation, they were required to do so here.

In *Cornell*, the California Court of Appeal recognized that nothing in the text of the Bane Act "requires that the offending threat, intimidation or coercion be independent from the constitutional violation alleged." 225 Cal.Rptr.3d at 383. That case involved a claim for false arrest after the plaintiff had been arrested without probable cause. *Id.* at 363-64. The court found "that the use of excessive force can be enough to satisfy the threat, intimidation or coercion element of Section 52.1." *Id.* at 382. It also held "the Bane Act requires a 'specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell*, 225 Cal.Rptr.3d at 384).

"District courts in California have yet to reach a consensus as to whether a plaintiff bringing a Bane Act claim for deliberate indifference to serious medical needs must plead threats and coercion independent of the constitutional violation." *Lapachet v. Cal. Forensic Med. Grp. Inc.*, 313 F.Supp.3d 1183, 1195 (E.D. Cal. 2018). This Court is ultimately more persuaded by Defendants' position that claims for deliberate indifference to serious medical needs must plead facts showing a threat, intimidation, or coercion. The court in *Cornell* found that the plaintiff did not have to demonstrate additional coercive or threatening facts beyond the false arrest claim because there is something inherently coercive about an arrest. *Cornell*, 225 Cal.Rptr.3d at 382. Contrastingly, there is nothing inherently threatening, intimating, or coercive about failing to provide adequate medical care. While nothing in the

text of the Bane Act "requires that the offending threat, intimidation or coercion be independent from the constitutional violation alleged", id. at 383, the text does require that a right has been "interfered with [. . .] by threats, intimidation, or coercion" or by an attempt to threaten, intimidate, or coerce. Cal. Civ. Code § 52.1(a)-(b). Because Plaintiffs have not alleged any facts indicating threats, intimidation, or coercion, they have failed to state a plausible claim under the Bane Act. Accordingly, Defendants' Motion to Dismiss the Bane Act claim against Sheriff Honea is GRANTED WITHOUT PREJUDICE. Plaintiffs have also stipulated to dismiss their claim under California Government Code § 845.6. Opp'n at 14. Accordingly, Defendants' Motion to Dismiss this claim is also GRANTED WITH PREJUDICE.

>        6.   Negligence, Medical Negligence, and Wrongful
>             Death Claims

"The elements of a cause of action for negligence are duty, breach, causation, and damages." Melton v. Boustred, 107 Cal.Rptr.3d 481, 488 (Ct. App. 2010). "The elements of [a] medical negligence cause of action [are]: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Belfiore-Braman v. Rotenberg, 235 Cal.Rptr.3d 629, 632 n.3 (Ct. App. 2018) (quoting Turpin v. Sortini, 643 P.2d 954, 960 (Cal. 1982)). "The elements of the cause of action for wrongful death

are the tort (negligence or other wrongful act), the resulting

death, and the damages, consisting of the pecuniary loss

suffered by the heirs." Lattimore v. Dickey, 239 Cal.App.4th

959, 968 (2015).

Defendants in one sentence argue that Plaintiffs are unable

to establish causation between the alleged actions of Sheriff

Honea and the suicide of Mr. Lowe. See Mot. at 12. Defendants

cite to no persuasive authority to support their argument. This

in insufficient to warrant dismissal at this stage. As

explained above, the Court finds Plaintiffs have adequately

alleged causation between the acts of Butte County employees and

Mr. Lowe's death. Whether Defendants Sheriff Honea and Butte

County can be liable for these acts is a different question,

that without adequate briefing from the parties the Court

declines to address. Accordingly, the Court DENIES Defendants'

Motion to Dismiss the seventh and eighth causes of action for

negligence, medical negligence, and wrongful death.


### III.   ORDER

For the reasons set forth above, the Court GRANTS IN PART

and DENIES IN PART Defendants' Motion to Dismiss:

1.   Defendants' Motion to Dismiss the entire complaint

under Rule 8 is DENIED;

2.   Defendants' Motion to Dismiss Plaintiffs' 1983 claims,

counts one and two, against Sheriff Honea in his individual

capacity is GRANTED WITHOUT PREJUDICE;

3.   Defendants' Motion to Dismiss the 1983 claims against

Sheriff Honea in his official capacity is GRANTED WITH PREJUDICE;

4.   Defendants' Motion to Dismiss the 1983 claims against the County, claims one, two, and three, is GRANTED WITHOUT PREJUDICE;

5.   Defendants' Motion to Dismiss Plaintiffs' Bane Act claim is GRANTED WTIHOUT PREJUDICE;

6.   Defendants' Motion to Dismiss Plaintiffs' claim under California Government Code Section 845.6 is GRANTED WITH PREJUDICE;

7.   Defendants' Motion to Dismiss Plaintiffs' state law claims for negligence, medical negligence, and wrongful death is DENIED.

If Plaintiffs elect to amend their complaint, they shall file an Amended Complaint within twenty (20) days of this Order. Defendants' responsive pleadings are due twenty (20) days thereafter.

IT IS SO ORDERED.

Dated: May 7, 2021

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE